## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **COURIER SOLUTIONS, INC.,** | § | |
| | § | |
| **Plaintiff/ Counter Defendant** | § | |
| | § | |
| | § | |
| **CSA DELIVERY, INC., d/b/a COURIER** | § | |
| **SOLUTIONS OF AMERICA, INC.,** | § | **CIVIL ACTION NO. 3-08CV2254-N** |
| **WOODROW CLAYTON, SR., WOODROW** | § | |
| **CLAYTON, JR., DARLENE CLAYTON,** | § | |
| **ACTION COURIER & LOGISTICS, LLC,** | § | |
| **NORTH AMERICAN PRESORT, INC., and** | § | |
| **HOUSTON AREA COURIERS, INC.,** | § | |
| | § | |
| **Defendants//Counter Plaintiff /Third** | § | |
| **Party Plaintiff** | § | |
| | § | |
| **Oliver Williams,** | § | |
| **Tony Young, and** | § | |
| **Jason Loftis** | § | |
| | § | |
| **Third Party Defendants** | § | |

## DEFENDANTS RESPONSE AND MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES

Respectfully Submitted,

DANIEL J. HOFFMAN & ASSOCIATES

By:     /s/ *Daniel J. Hoffman*
    Daniel J. Hoffman
    Texas Bar No. 00785968
    Samantha Garbis
    Texas Bar No. 24050637
    314 Sawdust Road, Suite 205
    The Woodlands, Texas 77380
    Telephone:281.367.9550
    Facsimile: 281.367.1944

SHACKELFORD, MELTON & McKINLEY, LLP

By: ___/s/ Martha Hardwick Hofmeister___
    Martha Hardwick Hofmeister
    State Bar No. 08981500
    3333 Lee Parkway, Tenth Floor
    Dallas, Texas 75219
    Telephone:214.780.1400
    Facsimile: 214.780.1401
    EMail:     mhardwick@shacklaw.net

    ATTORNEYS FOR DEFENDANTS,
    CSA DELIVERY, INC., d/b/a COURIER
    SOLUTIONS OF AMERICA, INC.,
    WOODROW CLAYTON, SR., WOODROW
    CLAYTON, JR., DARLENE CLAYTON,
    ACTION COURIER & LOGISTICS, LLC,
    NORTH AMERICAN PRESORT, INC., and
    HOUSTON AREA COURIERS, INC.

Of Counsel:

Kenneth H. Johnson
Texas Bar No. 10762000
Kenneth H. Johnson & Associates
P.O. Box 630708
Houston, Texas 77263
Telephone:     713.780.7047
Facsimile:     713.780.7671

Richard L. Moseley
Texas Bar No. 14570900
P.O. Box 630708
Houston, Texas 77263
Telephone:     713.780.7047
Facsimile:     713.780.7671

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

LIST OF AUTHORITIES ....................................................................................... ii

A. Procedural Background ..................................................................................... 2

B. Supporting Evidence ........................................................................................ 3

C. ARGUMENT ................................................................................................... 8

75% of Time Allocated To Claims On Which Attorneys
Fees Were Awarded Is Too High ……………………………………..8

Lawler Factors ……………………………………………………………15

(1) Time and Labor Required ……………………………………………12
(2) Novelty and Difficulty of the Questions Presented ………………16
(3) Skill Requisite to Perform Legal Service Properly ………………16
(4) Preclusion of Other Employment …………………………………19
(5) Customary Fees……………………………………………………19
(6) Whether the fee is Fixed or Contingent ……………………………20
(7) Time Limitations Imposed by Clients or Circumstances …………22
(8) Amount Involved …………………………………………………22
(9) Undesirability of Case ……………………………………………23
(10) Nature of Professional Relationships with Client ………………24
(11) Awards in Similar Cases …………………………………………24
(12) Experience, Reputation, and Ability of Counsel …………………24

Revised Exhibit A Should Not Be Allowed ……………………………25

Post Judgment Fees Requested Are Too High …………………………26

D. CONCLUSION .............................................................................................. 27

CERTIFICATE OF SERVICE ........................................................................... 29

## LIST OF AUTHORITIES

**Cases:**                                                                                           **Page(s)**

*Cooper v. Pentecost*, 77 F.3d 829, 833 (5th Cir. Miss. 1996)…………………………………..23

*Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)……………12, 16

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. Ga. 1974)………….. 15, 24

*Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 298 (5th Cir. 2007) ……………………….9

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561-562 (U.S. 1986)…………………………………………………………………………………....8, 12, 19

*Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (U.S. 1987)………………21

*Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000)………………………..20

*Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)…………………………10

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)………………………..9, 10

*Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. Miss. 1993)…………………………………….17, 27

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **COURIER SOLUTIONS, INC.,** | § | |
| | § | |
| **Plaintiff/ Counter Defendant** | § | |
| | § | |
| | § | |
| **CSA DELIVERY, INC., d/b/a COURIER** | § | |
| **SOLUTIONS OF AMERICA, INC.,** | § | **CIVIL ACTION NO. 3-08CV2254-N** |
| **WOODROW CLAYTON, SR., WOODROW** | § | |
| **CLAYTON, JR., DARLENE CLAYTON,** | § | |
| **ACTION COURIER & LOGISTICS, LLC,** | § | |
| **NORTH AMERICAN PRESORT, INC., and** | § | |
| **HOUSTON AREA COURIERS, INC.,** | § | |
| | § | |
| **Defendants//Counter Plaintiff /Third** | § | |
| **Party Plaintiff** | § | |
| | § | |
| **Oliver Williams,** | § | |
| **Tony Young, and** | § | |
| **Jason Loftis** | § | |
| | § | |
| **Third Party Defendants** | § | |

**DEFENDANTS RESPONSE AND MEMORANDUM IN RESPONSE TO
PLAINTIFF'S MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES**

Defendants, CSA Delivery, Inc. d/b/a Courier Solutions of America, Inc., Woodrow W

Clayton, Sr. ("Clayton Sr."), Woodrow Clayton, Jr. ("Clayton Jr."), and Darlene Clayton ("D.

Clayton"), Action Courier & Logistics, LLC ("ACT"), North American Presort, Inc. ("NAP"),

and Houston Area Couriers, Inc. ("HAC"), asks the court to deny the amount of attorneys fees

requested by Plaintiff, Courier Solutions, Inc. ("CSI") in *Plaintiff's Motion for Award of

Reasonable Attorneys' Fees and Supporting Brief* ("CSI's Motion for Attorney Fees") and

reduce the amount requested to a fair and reasonable amount.

## A. Procedural Background

1.     Plaintiff and counter defendant is Courier Solutions, Inc. ("CSI").

2.     Defendants, counter plaintiffs, and third party plaintiffs are: CSA; Clayton Sr.; D. Clayton; Clayton Jr.; ACT; NAP; and HAC.

3.     Third Party Defendants are Jason Loftis ("Loftis"), Oliver Williams ("Williams"), and Tony Young ("Young").

4.     Plaintiff sued Defendants for various federal and state causes of action including common law unfair competition, statutory misappropriation of trade name, statutory trade mark infringement, statutory unfair competition, tortious interference, and breach of fiduciary duty.

5.     Defendants sued Plaintiff and Third Party Defendants for conversion, breach of contract , and tortious interference.

6.     After a trial on the merits, the court submitted the case to the jury.

7.     The jury returned a verdict for CSI in part and Defendants in part as follows:

    a. Clayton Sr. unfairly competed with CSI;
    b. CSI would be fairly and reasonably compensated for such unfair competition with the payment of $350,000.00.
    c. Clayton Sr. breached its fiduciary duty to CSI;
    d. CSA, Clayton, Jr., D. Clayton, ACT, NAP, and HAC knowingly participated in Clayton Sr.'s breach;
    e. CSI would be fairly and reasonably compensated for such breach with the payment of $1,060,098.00.
    f. Clayton Sr. interfered with CSI's contract with Washington Mutual Bank N.A. ("WAMU");
    g. CSI would be fairly and reasonably compensated for such interference with the payment of $350,000.00.
    h. CSI converted CSA's share of a WAMU check;
    i. CSA would be fairly and reasonably compensated for such interference with the payment of $530,624.18 by CSI.

8.     The clerk entered judgment on or about May 16, 2011.

**B. Supporting Evidence**

9.      CSI's Motion for Attorney Fees and the Exhibits attached thereto contain a number of material errors and misrepresentations to this court.

10.      CSI's Motion for Attorney Fees (at page 2, paragraph 2), and  the Affidavit of Emil Lippe, Jr. ("Lippe's Affidavit") (at paragraph 4) allege that a reasonable rate for Corey Hyden ("Hyden") who charged $44,340.00 (see paragraph 9 of Lippe's Affidavit) in this case  is $200 per hour and that Hyden had been practicing for less than a year; what CSI neglected to tell the court is that Hyden became licensed in November of 2010; graduated from law school in May of 2010;  and started doing work on this case as early as May of 2009 when he was likely still a second year law student.; accordingly $150.00 instead of $200.00 would be a more appropriate rate for Hyden and Hyden's billings of $44,340.00 should be reduced by 25% or $11,085.00.

11.      To buttress their argument that the outrageous amount of time spent on this case was justified, in CSI's Motion for Attorney Fees , CSI claims that:

   a.   the Defendants were "concealing records" (page 5, paragraph 2);
   b.   there were "document production difficulties from both Washington Mutual/Chase (page 5, paragraph 2);
   c.   CSI was unable "to obtain necessary documentation from both Defendants" and Washington Mutual (page 5, paragraph 2);
   d.   there was "stonewalling in discovery both by Defendants and by Washington Mutual/Chase" (page 5, paragraph 3, and page 6, paragraph 1);
   e.   there was a "refusal to provide discovery practiced by Defendants", with the intent to "'wear down Plaintiff's counsel and make them give up" (page 5, paragraph 3);
   f.   there was "difficulty in obtaining billing records properly organized by Defendants and complete payment records from Washington Mutual/Chase" (page 6, paragraph 1);
   g.   Defendants consistently "failed to produce discovery critical to the calculation of damages" (page 7, paragraph 2);

and then goes on to make these same arguments again in Lippe's Affidavit stating:

Defendants Response & Memorandum in Response to
Plaintiff's Motion for Award of Reasonable Attorneys' Fees                    Page 3

     h.  CSI filed "*__numerous__* motions to compel" with this court (paragraph 6);

but the truth of the matter is during the nearly two and one half years this case was pending the

Defendants produced tens of thousands of documents and their entire electronic data records, and

that in this case,  CSI never filed even *__one__* motion to compel documents from the Defendants.

    12.     In fact CSI only ever filed *__two__* motions to compel in this entire case:

     a.  one was to obtain documents from Washington Mutual and was unopposed;  and

     b.  the other was not about documents at all but to defeat Clayton Sr.'s invocation of

       his 5th Amendment rights;

and while CSI did file one unopposed motion for sanctions against Washington Mutual, and

subsequently filed four agreed continuances which were exactly the same but for the due date of

discovery, one might argue the amount of effort to file two motions to compel, one motion for

sanctions, and four agreed continuances not to constitute an inordinate amount of discovery work

in a two and one half year multimillion dollar case..

    13.     CSI's Motion for Attorney Fees also argues that it had difficulties obtaining tax

returns from the Defendants but fails to advise the court the tax returns it had difficulty obtaining

were more than 5 years old they couldn't find them; that the Defendants offered to obtain the

returns from the IRS if CSI would pay the fee required by the IRS; that CSI failed or neglected to

pay that fee for four months until on or about July 26, 2010 nearly 45 days before the September

14, 2010 trial setting ultimately resulting in yet another continuance in this case in order to

obtain this information; and that in order to get the returns, Defendants had to get the Taxpayer

Advocate's Office involved, and did all of the tax work to get the returns at its own expense.

    14.     CSI's Motion for Attorneys Fees also argues it had difficulty obtaining billing

records, yet it had Defendants invoices since October 20, 2008 when they were produced in

response to CSI's request for discovery issued in the state court case and when they were referenced again in response to CSI's discovery request in this case on or about September 14, 2009.

15.    CSI's Motion for Attorney Fees at page 6, paragraph 3 states CSI's attorneys performed their services "vigorously and effectively" but fail to mention:

    a.    on September 14, 2009 Defendants produced 4 banker boxes of documents for copy and/or review in Defendants counsel's office in response to CSI's  Plaintiff's Request for Documents and Things to be Production in Conjunction with Notice of Deposition of Woodrow W. Clayton, Jr., Woodrow W. Clayton Sr. and Darlene Clayton, yet CSI did not have a copy service pick up the documents until more than 3 months later on December 23, 2009 approximately 30 days before the original trial setting of January 25, 2010, and did not obtain the documents from the copy service until nearly a year later on or after September 3, 2010 after it paid the bill and arranged for pickup less than 45 days before the October 12, 2010 trial setting;

    b.    \CSI's motion to compel against Washington Mutual was granted on November 20, 2009 but CSI took no further action until the filing of its motion for sanctions on March 26, 2010 only 30 days before the April 26, 2010 trial setting which such delay ultimately caused the need for a continuance which was granted by the court on or about April 7, 2010 on or about so that Plaintiff could attempt to obtain documents requested from Washington Mutual.;

    c.    because **_no_** damages calculations were produced to Defendants until September 20, 2010, after the time required by the Federal Rules of Civil Procedure, CSI

negotiated away all of its rights to pursue damages from clients other than WAMU in exchange for agreement not to file a motion to exclude all damages;

d. CSI did not revise its damages calculations until less than a month before trial and did not finalize its damages calculations until two days before trial.

16.     Lippe's Affidavit at paragraph 8 alleges the time records for West & Associates **_after_** December 1, 2008 were attached to his affidavit as Exhibit A, when in fact the time records for West & Associates **_prior to_** December 1, 2008 were attached to his affidavit as Exhibit A.

17.     After Defendants' counsel advised CSI of the mistake above, in an attempt to correct this error, without permission of court, CSI filed its *Notice of Filing Substituted Exhibit "B" To Plaintiffs' Motion Award of Reasonable Attorney Fees* ("CSI's Substituted Exhibit Notice") to which was attached what **_appears_** to be the revised Exhibit A, but which is identified and marked as Exhibit B, containing time records for West & Associates **_after_** December 1, 2008 ("Substituted Exhibit B"); further in the title of the motion, the motion, and the exhibit, CSI appears to have mistakenly identified a substituted Exhibit A as Exhibit B.

18.     Lippe's Affidavit at paragraph 9 indicates the reasonable fees from West & Associates is $227,827.50 but amount of attorney fees reported on the Substituted Exhibit B is $219,838.50; a difference of $7,989.00;

19.     Although CSI does not allege the attorney time could not be segregated, CSI made no attempt to segregate its attorney time between matters related, when clearly time is able to be segregated by the billing records.

20.     Defendants did segregate CSI's attorney fees based on the billing records CSI provided and Defendant's work is attached hereto and incorporated herein as Exhibit 1, 2, and 3 (excel spreadsheets derived from CSI's exhibits revised B (A), B, and C) and Exhibits 4, 5, and 6

(CSI's exhibits revised B (A), B, and C annotated with Defendant's footnotes A through Z describing the reason for Defendants' challenge).

  21.  In summary, Defendants' Exhibit 1 through 6 show:

   a. Time related to state court case:

     i. Defendants Revised Exhibit B (A):  $21,361.50 (see last line of Exhibit 1 attached hereto and incorporated herein)

     ii. Defendants Original Exhibit B and C:  $36,215.00 (see last line of Exhibit 2 attached hereto and incorporated herein); and

     iii. resulting in a total of $57,567.50 related to the state court case.

   b. Time related to purely defensive matters: $2,690.00 (see last line of Exhibit 2 attached hereto and incorporated herein);

   c. Time related to double billings: $13,000.00 (see last line of Exhibit 1 attached hereto and incorporated herein);

   d. Time related to overbilling of Hyden at $200.00 per hour:  $11,085.00 (see paragraph 10 above).

   e. For a total of $84,351.50 ($21,361.50 + $36,215.00 + $2,690.00 + $13,000.00 + $11,085.00) which should not be considered as relating to CSI's unfair competition claim.

   f. Time related to securing Washington Mutual/Chase Discovery: $13,895.00 (see last line of Exhibit 2 attached hereto and incorporated herein) which will be discussed below.

22.     To the extent facts are not apparent from the record or Exhibit attached or referred, please see the Affidavit of Daniel J. Hoffman, attached hereto and incorporated herein as Exhibit 8.

### C. Argument

23.     CSI's attorney fees are unreasonably high, even after they reduced them by 75%.

24.     There are over 100 separate statutes providing for the award of attorney's fees; and although these provisions cover a wide variety of contexts and causes of action, the benchmark [**3097] for the awards under nearly all of these statutes is that the attorney's fee must be "reasonable." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561-562 (U.S. 1986).

25.     CSI's attorney's fees are not reasonable.

### *75% of Time Allocated To Claims On Which Attorneys Fees Were Awarded Is Too High*

26.     Plaintiff's argument that 75% of the fees incurred in this case are related to the unfair competition claim is untenable.

27.     This court ruled in its Final Judgment that CSI was due attorney fees solely with respect to the $350,000 jury verdict CSI was awarded pursuant to their Lanham Act claim for unfair competition.

28.     Oddly, CSI is claiming its reasonable and customary award of attorney fees for unfair competition ($355,614.38) should exceed the amount the jury awarded on that claim ($350,000.00); and that does not even include the post judgment appeals attorney fees they are seeking of $100,000.00.

29.     CSI sued Defendants on 6 claims:  common law unfair competition; statutory misappropriation of trade name, statutory trade mark, statutory unfair competition, tortious

interference, and breach of fiduciary duty., but  was only awarded attorneys fees for one of its claim, unfair competition.

30.    Defendants sued CSI on 3 claims:  conversion, breach of contract, and tortious interference with contract.

31.    In Lippe's Affidavit at paragraph 9, CSI acknowledges that it is not entitled to be awarded attorney fees for the work it performed in the state court lawsuit, for its state law claims (3 claims), or for Defendant's counterclaims (3 claims), but fails to mention it is not allowed a recovery for attorney fees for its Lanham Act misappropriation of trade name or its Lanham Act trade mark claims as well.

32.    The general rule regarding the recovery of fees in Texas is that  "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 298 (5th Cir. 2007) *citing  Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).

33.    CSI makes no claim that its fees are not able to segregate its fees or that it even attempted to segregate fees, but instead in Lippe's Affidavit at paragraph 9, argues it has calculated what it believes to be a fair allocation of fees and that allocation is 75%, without any explanation or analysis of how it got there.

34.    In fact, Defendants have reviewed the billing records CSI provided and found that many of the entries are easily able to be segregated and have determined that $84,351.50 (see above) is attributable to the state court case, purely defensive matters, double billing, and overbilling.

35.    Accordingly the portion of CSI's attorney fees which should be apportioned, if any, is $389,801.00 ($474,152.50 – $84,351.50), not $474,152.50 as CSI would argue.

36.     One might argue that since CSI prevailed on only 1 of 9 offensive and defensive claims litigated, 1/9 or 11% of $389,801.00 or $42,878.11 is a more fair allocation of attorney fees attributable to unfair competition.

37.     However, the Texas Supreme Court recognized that an exception to the "duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Id. citing Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991).

38.     But the *Sterling* exception was modified by *Chapa* and held: Intertwined facts do not make tort [attorney's] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated. *Id. citing Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d at 313-

39.     CSI has made no argument that discrete legal services advanced both recoverable and unrecoverable claims.

40.     Of CSI's and Defendants' 9 combined claims (common law unfair competition; statutory misappropriation of trade name, statutory trade mark, statutory unfair competition, tortious interference, breach of fiduciary duty., conversion, breach of contract, and tortious interference), Defendants believe none of it claims are interrelated and that only ***two*** of CSI's claims, those for common law unfair competition and statutory unfair competition are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.

41.     If  proof of misappropriation of trade name and statutory trade mark required the same facts, the jury would have awarded damages for those claims as well.

42.     Accordingly since only 2 of the 9 claims tried are intertwined, only 2/9 or 22% of CSI's attorney fees of $389,801.00 ($474,152.50 – $84,351.50)   or $85,765.22 should be awarded to CSI for pre judgment attorney fees.

43.     Actually this amount is fairly close to what would have been awarded if CSI were entitled to a 40% contingency fee on their $350,000 recovery ($140,000.00) and is much closer to a reasonable and customary award than the $355,614.38 CSI are claiming.

44.     Further, the court in *Chapa* held that when, at least some of the attorney's fees are attributable only to claims for which fees are not recoverable, segregation of fees ought to be required and the jury ought to decide the rest and an unsegregated damages award requires remand.  *Id.* at 314.

45.     Here as in Chapa, there are unsegregated that should be decided by a jury.

46.     In the event this court does not remand this case back to a jury to for an allocation of CSI's attorney fees, CSI should be awarded $85,765.22 for attorney fees pre award of attorney fees as calculated above.

### *Lawler Factors*

47.     Further, in discussion of the reasonableness of its attorney's fees Plaintiff cites to *Matter of Lawler*, 807 F.2d 1207 (5th Cir. 1987).

48.     Defendants agree, the appropriate procedure for determining a reasonable award of attorneys' fees consists of twelve factors which are to be applied by the court in determining the amount of the fees. The factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the

client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *In re Lawler*.

49.     Further, Defendants agree the "lodestar" method is the appropriate method for determining reasonable fees whereby the court considers the number of hours reasonably necessary to perform the legal services for which compensation is sought. multiplied by a reasonable hourly rate for the attorney providing the services, the latter being based on the court's determination of the attorney's reputation, status and type of activity for which the attorney is seeking compensation. The sum of the two figures is the 'lodestar' which can then be adjusted upward or downward based on the contingency of success, and the quality of an attorney's work. In all instances plaintiffs have the burden of establishing entitlement to the award claimed and any adjustment to the 'lodestar.'" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 553-55.

50.     Accordingly, factors necessary to the reasonableness of the lodestar figure as calculated in this case are discussed in more detail below.

### *(1) Time and Labor Required*

51.     As justification for the exorbitant amount of attorney fees claimed (and therefore time and labor) to pursue this case, CSI offers its attorneys' time billing records identified as Exhibits A, B, and C.

52.     A party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented. Hensley, 461 U.S. at 432-34, 103 S. Ct. at 1939; Von

Clark, 916 F.2d at 259. The hours surviving this vetting process are those reasonably expended on the litigation. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. Miss. 1993)

53.     However the very records to which CSI cites to support its time and labor argument are rife with errors:

   a.   initially Exhibit A which Lippe's Affidavit indicated were the time billing records for West & Associates *after* December 1, 2008 were actually the time billing records of for West & Associates *before* December 1, 2008;

   b.   when Defendants called the error above to CSI's attention CSI provided the time billing records for West & Associates *after* December 1, 2008 but mistakenly called them Exhibit B;

   c.   Lippe's Affidavit at paragraph 9 indicates the reasonable fees from West & Associates is $227,827.50 but amount of attorney fees reported on the Substituted Exhibit B is $219,838.50; a difference of $7,989.00;

   d.   West & Associates' records contain double billings in the amount of $13,000.00;

   e.   Lippe & Associates argues $200.00 per hour is a reasonable charge for the work of a second year law student.

54.     Further, CSI's claim for attorney fees is inadequately documented and that part of the fees (Exhibit A – the West & Associates fees which were part of CSI's original Motion for Attorney Fees) in the amount of $227,827.00 which is not properly documented should not be awarded.

55.     As further justification for the exorbitant amount of attorney fees claimed (and therefore time and labor spent) on this case, CSI argues the litigation became protracted because of the bankruptcy of Washington Mutual and the delays in obtaining records from them but the

record shows CSI served its first subpoena on Washington Mutual on or about May 29, 2009, nearly 6 months after the case was commenced, that discovery was due on or about June 29, 2009, yet CSI waited more than 2 months until on or about September 2, 2009 to file its motion to compel, that the motion to compel was granted on or about November 20, 2000, yet CSI waited more than 5 months, until on or about March 26, 2010 to file its motion for sanctions, and then ***_voluntarily_*** granted Washington Mutual 4 extensions on discovery production eventually until June 4, 2010 to produce documents, which shows that to some degree the litigation was protracted in reality because CSI simply failed to timely follow up for more than a year (6 months + 2 months + 5 months cited above).

56.     CSI's Exhibit A, B, and C and Defendant's Exhibit 2 attached hereto and incorporated by reference herein, show CSI spent $13,895.00 in attorney fees for time expended in filing the one unopposed motion to compel, and one unopposed motion for sanctions, yet CSI only requested $2,000 of attorneys fees from this court in its sanctions motions and was only awarded $250.00 in attorney's fees as sanctions for Washington Mutual's failure to comply.

57.     As further justification for the exorbitant amount of attorney fees claimed (and therefore time and labor spent) on this case, CSI argued it filed "***_numerous_*** motions to compel", when the reality is CSI only filed ***_two_*** motions to compel, one against WAMU to obtain discovery, and one against Clayton, Sr. to defeat Clayton, Sr.'s 5th amendment claim.

58.     As further justification for the exorbitant amount of attorney fees claimed (and therefore time and labor spent) on this case, CSI argued the Defendants "concealed their business", that CSI was unable to obtain "necessary documentation" that the Defendants and Washington Mutual were "stonewalling" and attempting to "'wear down' Plaintiff's counsel";

this is just not consistent with CSI only filing two motions to compel, one of which had ***nothing*** to do with document production.

59.     As further justification for the exorbitant amount of attorney fees claimed (and therefore time and labor spent) CSI makes ***no*** argument as to why two law firms and five separate attorneys were needed to pursue this case, despite the fact that lead counsel is a board certified trial lawyer.

60.     Indeed, often when multiple firms or multiple attorneys are involved in a case, there is a certain amount of unproductive time just bringing each other up to speed.

61.     The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. Ga. 1974).

62.     CSI had and charged for ***3*** lawyers at trial and 2 lawyers at every hearing and deposition, save for the deposition of AJ Shepherd, at which only 1 lawyer was present.

63.     While Defendants had 2 lawyers present at ever hearing and deposition, the majority of such instances, Defendants' counsel wrote off the time of the attorney billing at the lower rate and as is common with many attorneys, Defendants counsel would from time to time write off time as an accommodation to their clients; yet there is no evidence that CSI's attorney ever wrote off ***any*** time.

64.     Hours that, even though actually expended, are "excessive, redundant, or otherwise unnecessary" or that result from a case being "overstaffed" are not hours "reasonably

expended" and must be excluded from an award of attorney's fees.  *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

65.     CSI has put forth no argument as to why 2 firms and 5 attorneys were necessary to try this case and their fees should be reduced accordingly.

### *(2) Novelty and Difficulty of the Questions Presented*

66.     Instead of arguing this case presented novel or difficult questions, CSI's entire argument with respect to this element seems to be that the case was novel or difficult because off the difficulty CSI ***alleged*** they had obtaining discovery, which was already argued with respect to element (1).

67.     In fact, in CSI's first statement under its argument for this element it admits the issues are not "complex".

68.     Accordingly CSI has given no evidence that the questions involved in this case were novel or difficult and this factor should be used to discount any award of attorney fees.

### *(3) Skill Requisite to Perform Legal Service Properly*

69.     CSI first argues a high degree of skill was required in this case because of the difficulty in obtaining records.

70.     CSI filed ***one*** unopposed motion to compel and ***one*** unopposed motion for sanctions.

71.     Both seem fairly straightforward and contain the kind of arguments one might find in a forms book like O'Connor's and Defendants are at a loss as to understand how either required any special skill.

72.     Next CSI argues a high degree of skill was required to understand trademark and other legal issues involved, yet fails to cite what was difficult about the trademark issues, fails to

indicate that CSI's counsel had some special experience or expertise with trademark law, and wholly fails to mention what "other" legal issues were difficult.

73.    Next CSI argues its counsel performed his services "vigorously and effectively"; this seems at odd with the facts.

74.    Indeed, the record shows that often, CSI did nothing for months until prodded to do so by an impending trial deadline.

75.    A few examples that this case was not performed "vigorously and effectively" include:

a.    Despite the fact that discovery was due from Washington Mutual/Chase on or about June 29, 2009, CSI did not file a motion for sanctions until March 26, 2010, on the eve of the April 26, 2010 trial setting.

b.    In response to CSI's discovery requests concerning old tax returns that Defendants no longer possessed, Defendants offered to do the legwork to obtain the returns from the IRS without charge if CSI would pay the fees charged by the IRS, and after such offer, CSI waited more than 3 months before providing such payment for the requests to the IRS for tax returns on July 26, 2010, on the eve of the September 14, 2010 trial setting; and

c.    In response to CSI's discovery requests, Defendants made bank records available to CSI for copying in September of 2009, CSI choose to use Defendants' document service to copy the documents but did not pick up the documents until December 23, 2009 approximately 30 days before the original trial setting of January 25, 2010, and then CSI because CSI had delayed paying the document service for the copying, CSI did not receive the documents until after it paid the

document service, on or about September 2, 2010 on the eve of the October 12, 2010 trial setting;

d.  CSI's damages calculation ($47,000,000 as repeatedly stated by Williams at trial) was based entirely on Defendants' QuickBooks files (electronic accounting data) which had been produced to CSI in September 2009, yet CSI failed to disclose damages calculations timely in accordance with the Federal Rules of Civil Procedure; produced no damages calculation until nearly a year later, on September 20, 2010, as part of its duty to exchange trial exhibits on the eve of the October 12, 2010, and did not produce final damages calculations until March 5, 2011, on the eve of the March 7, 2011 trial.

e.  Each of these delays by CSI in failing to pursue discovery timely resulted in a trial continuance, resulting in higher fees charged to both sides in this case.

f.  Further, because it takes more time to do work at the last minute than it does when properly planned, because CSI repeatedly waited to do things until the eve of trial, it likely cost CSI substantially more in attorney fees than had the work been properly planned.   Further, because CSI did not produce its damages calculation timely, CSI was forced to reduce the sales which were in controversy from more than $84 million as alleged in CSI's Motion for Attorney Fees to $47 million as alleged in CSI's Plaintiff's Exhibit 93 and 94 to avoid a motion to exclude all evidence of damages on the basis of failure to timely disclose damages.

76.    Oddly where a high degree of skill was actually needed, in interpreting QuickBooks data and calculating the "millions of dollars" of damages claimed by CSI, CSI

failed to identify or use an expert, and instead relied on the testimony of one of CSI's trial lawyers to lay the foundation for the damages, and relied on Williams who admitted he had no significant experience in accounting or calculating damages; instead likely spending thousand or tens of thousands of dollars in attorney fees attempting to calculate the damages themselves.

77.     CSI has not set forth any arguments that an inordinate amount of skill was necessary to perform its tasks and in fact the record shows CSI's attorneys performed their tasks neither vigorously nor effectively.

78.     The quality of an attorney's work is a factor in determining the amount of reasonable attorney's fees. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 553-554.

79.     There should be a downward adjustment to the lodestar as calculated by Plaintiff for the failure to "vigorously and effectively" pursue this case.

### *(4) Preclusion of Other Employment*

80.     Defendants agree this is not a relevant factor in this case and do not address this issue further.

### *(5) Customary Fees*

81.     Defendants do not object to the rates proposed by counsel for the work performed, except for the rate argued for Hyden, of $200 per hour.

82.     As discussed above, Plaintiff argues, that Hyden, an associate licensed for less than one year, should command a rate of $200 per hour justifying an expenditure of $44,340.00.

83.     However, Plaintiff has not advised the court, that Hyden did not graduate from law school until May 2010 and was not licensed until November 2010, yet billed all of his time, including time performed as a second year law student, at $200.00 an hour.

Defendants Response & Memorandum in Response to
Plaintiff's Motion for Award of Reasonable Attorneys' Fees                    Page 19

84.    Accordingly, Defendants argue that a rate of $200.00 for Hyden, an associate licensed less than 4 months at the time of trial  is not a reasonable when compared to the $250.00 rate CSI argues is proper for Diana Laquey and Derrell Coleman, two attorneys with more than 20 years experience.

85.    Evidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable, but the opponent's time is not an "immutable yardstick of reasonableness."  *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000).

86.    In this case, in comparison to Defendants counsel's billing records reflect that it's associate, Samantha Garbis Goss, an attorney licensed to practice in the state of Texas for 5 years, billed out at a rate of $195.00 per hour.

87.    Accordingly Defendants believe a more appropriate rate for Hyden would be $150.00 per hour, which would reduce the $44,340.00 CSI seeks for his time by about 25% or approximately $10,000.00

### (6) *Whether the fee is Fixed or Contingent*

88.    First CSI claims the fees claimed in this case are contingent.

89.    Yet the only fee contract ("Contract") with its attorneys CSI produced in discovery (attached hereto and incorporated herein as Exhibit 7), indicates fees are a hybrid with part being billed at a reduced hourly rate and part being billed at a contingency fee award.

90.    Then CSI goes into another discussion involving a litany of various discovery abuses and misdeeds alleged of the Defendants, misrepresents the amount in controversy as exceeding $84,000,000, and implies that Defendants counsel has been paid in full which is just

not true, oddly none of which have any place in an argument of whether or not fees are fixed or contingent.

91.     Finally, CSI argues the "contingency fee agreement" has been a "hardship" on counsel.

92.     Yet the Contract produced to Defendants indicates CSI's agreement with counsel is a "hybrid" agreement and states:

a.      CSI must pay out of pocket expenses; and

b.      the fee agreement was a contingency hybrid such that Plaintiff's counsel was entitled to invoice its fees at a reduced rate and was entitled to said fees whether successful or not

93.     Further still CSI's counsel as a board certified trial and appellate lawyer should have been aware of the "hardship" and that the common law tort claims of unfair competition, breach of fiduciary duty, and tortious interference with contract do not allow for the award of attorneys fees, and his client would not be reimbursed the cost of prosecuting or defending those claims, even if his client prevailed.

94.     .  The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case.  *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (U.S. 1987).

95.     Because the only fee contract produced to Defendants was not a contingency contract; because CSI's counsel's records indicate moneys were paid for which no credit was given; and because CSI's counsel was aware of any hardship when it took the case, there should be no adjustment for this element.

### *(7) Time Limitations Imposed*
### *by Clients or Circumstances*

96.     Defendants agree this is not a relevant factor in this case and do not address this issue further.

97.     CSI argues that the amount involved was over $47 million in gross revenue and tracking down genuine profits was difficult given the volume.

98.     However CSI offers no evidence that it did anything or spent any time to track down "genuine profits"; CSI never designated or used a consulting or testifying expert; and Williams repeatedly testified at trial that CSI damages or profits were the gross sales amounts of $47 million.

99.     Further the real amount involved is likely closer to approximately $1,060,098: the amount found by the jury to represent CSI's damages for tortious interference and the $1.2 million dollars found by Syd Thompson, the Defendant's expert to be CSI's damages.

100.    Because the amount involved is not as large as CSI makes it out to be, this factor justifies no adjustment to the reasonable amount of attorney's fees in this case.

### *(8) Amount Involved*

101.    CSI argues that the amount involved was over $47 million in gross revenue and tracking down genuine profits was difficult given the volume.

102.    However CSI offers no evidence that it did anything or spent any time to track down "genuine profits"; CSI never designated or used a consulting or testifying expert; and Williams repeatedly testified at trial that CSI damages or profits were the gross sales amounts of $47 million.

103.    Further the real amount involved is likely closer to approximately $1,060,098: the amount found by the jury to represent CSI's damages for tortious interference and the $1.2 million dollars found by Syd Thompson, the Defendant's expert to be CSI's damages.

104.    Because the amount involved is not as large as CSI makes it out to be, this factor justifies no adjustment to the reasonable amount of attorney's fees in this case.

### (9) Undesirability of Case

105.    The court in *Cooper* pointed out that the factor concerning the "undesirability of the case" had to do with issues like the certain stigmas associated with criminal and civil rights cases and "oppressive, unpleasant, or intimidating conditions" that would support an enhancement. *Cooper v. Pentecost*, 77 F.3d 829, 833 (5th Cir. Miss. 1996)

106.    Here CSI does not argue that the nature of this case was such that it was so oppressive or intimidating that an award of enhancement was necessary, but instead only complains unable to obtain needed information yet points to no cases which hold difficulties it faced in effecting discovery warrant an enhancement concerning fees.

107.    Further, Defendants have shown above that CSI's complaints about the difficulties they allege to have occurred with respect to discovery we exaggerated, false, or caused by CSI's own failure to diligently prosecute this case.

108.    It is appropriate for a court to enhance the lodestar amount only in certain exceptional cases where the prevailing party demonstrates that the enhancement is necessary to make the lodestar reasonable. Watkins  *Cooper v. Pentecost*, 77 F.3d 829, 833 (5th Cir. Miss. 1996).

109.    Here there is no evidence supporting a need for this court to enhance the lodestar amount with respect to the undesirability of the case.

### (10) Nature of Professional Relationships with Client

110.    CSI states that this is the only case in which it has used said counsel.

111.    A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office. The Court may appropriately consider this factor in determining the amount that would be reasonable. *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 719.

112.    CSI has provided no evidence that CSI's counsel varied its rate as a result of its relationship with CSI and this factor should be given no weight in assessing reasonableness of CSI's attorney fees.

### (11) Awards in Similar Cases

113.    CSI argues the hourly rates requested are customary for lawsuits concerning trademark infringement and unfair competition and are lower than those charged by larger firms in Dallas in Federal litigation.

114.    Lippe & Associates is not a large firm.

115.    Further, CSI presents no evidence concerning its allegation.

116.    Further, as discussed in more detail above, the hourly rates as provided by counsel appear to be in line with the normal hourly rates except for the proposed rate for Hyden is not reasonable given his experience in comparison to the other counsel in this case, including other co-counsel retained by Plaintiff.

117.    CSI has presented no evidence justifying an adjustment of attorney fees.

### (12) Experience, Reputation, and Ability of Counsel

118.    Plaintiff argues that counsel, Emil Lippe and Diana Laquey have extensive experience commanding the rates proposed.

119.    Defendants only issue with CSI's claims concerning the experience, reputation, and ability of counsel has to do with CSI's representation to the court that Hyden is an attorney with less than one year of experience when in fact some of Hyden's time was billed when he was not licensed to practice law and when he was a second year law student.

120.    CSI has presented no evidence concerning any specialized knowledge or experience justifying the billing rate for Hyden at $200.00 per hour, except that Hyden is a first year associate, when in fact, was only licensed 4 months prior to trial.

121.    CSI has presented no evidence justifying an adjustment of attorney fees.

### *Revised Exhibit A Should Not Be Allowed*

122.    The revised "Exhibit  B" which provides the record for the attorney's fees generated by West & Associates should not be considered because it was not submitted on or before the date ordered by this court.

123.

124.    This court previously ordered the attorneys in this case to confer concerning attorney fees.

125.    On or about May 27, 2011, the business day before the due date for CSI's Motion for Attorney Fees, CSI's counsel contacted Defendants' cousnesl for the first time and disclosed that attorney fees were approximately $474, 000 and that he believed 75% of them were attributable to the unfair competition claim upon which CSI was awarded damages, and just a few hours later, CSI filed its CSI's Motion for Attorney Fees which included Lippe's Affidavit, and also included Exhibits A, B and C which provided supporting documentation concerning attorneys fees.

126.     Lippe's Affidavit specifically stated that Plaintiff did not seek any attorney's fees award for time expended by West & Associates prior to December 2008 which related to the State Court action, but Exhibit A attached to Lippe's affidavit, included ***only*** the time prior to December 1, 2008.

127.     On or about June 8, 2011 after reviewing CSI's motion and conferring with its clients, Defendants' counsel advised CSI's counsel that Exhibit A was not proper. On or about June 13, 2011 at approximately 4:30 pm, five days after it was notified of the error and four days before Defendant's response was due, CSI filed its revised Exhibit B, without requesting leave of court, which was as near as Defendants can tell, should have been labeled Exhibit A which contained West & Associate's fees after December 1, 2008.

128.     Accordingly, either the information provided by Plaintiff on or about June 13, 2011 should not be considered by the court because:

    a.  it was submitted late;

    b.  it was submitted wrong;

    c.  it deprived Defendants of an adequate time to review and response; and

    d.  it is indicative of CSI's repeated failures to follow the deadlines imposed by the Federal Rules of Procedure.

### *Post Judgment Fees Requested Are Too High*

129.     CSI argues this court should award it $50,000.00 for representing Plaintiff on an appeal to the Court of Appeals, an additional $15,000.00 for responding to a Petition for Certiorari, and an additional $35,000.00 for briefing and appearance for oral argument in the event the writ is granted and for general relief, or a total of $100,000.00 for appeals.

130.     CSI provides no basis for this claim.

131.    Such a request is quite simply ludicrous.

132.    CSI alleges the entire amount of fees incurred in a nearly 2 ½ year lawsuit is $474,152.50 and requests this court to grant 25% of that amount for three tasks?

133.    Defendants have already ordered the transcript in this case and the amount quoted was approximately $5,000.00.

134.    Accordingly an award of $100,000.00 would mean $95,000.00 would be left for attorney fees and at Emil Lippe's $350 per hour hourly rate charged in this case that would mean CSI is requesting payment for 285 hours of Mr. Lippe's time or nearly 2 months of full time work at 40 hours a week.

135.    It does not take 285 hours to prepare an appeal, respond to a Petition for Certiorari, and brief and appear for oral argument in the event of appeal.

136.    Even if a week of 40 hours were allowed for each of these three tasks that would be 120 hours and at Mr. Lippe's billing rate of $350.00 per hour that would be $42,000.00 at most.

137.    No more than $42,000.00 should be allowed for appeals.

### D. Conclusion

138.    CSI should be awarded no more than $85,765.22 for attorney fees pre award of attorney fees as argued above.

139.    CSI should be awarded no more than $42,000.00 for appeals as argued above.

140.    The total amount of attorney fees awarded CSI should be no more than $127,756.22 and less if this court should so award.

Respectfully submitted,

DANIEL J. HOFFMAN & ASSOCIATES

By:      /s/ *Daniel J. Hoffman*
     Daniel J. Hoffman
     Texas Bar No. 00785968
     Samantha Garbis
     Texas Bar No. 24050637
     314 Sawdust Road, Suite 205
     The Woodlands, Texas 77380
     Telephone:281.367.9550
     Facsimile: 281.367.1944

and

SHACKELFORD, MELTON & M$^c$KINLEY, LLP

By:      /s/ *Martha Hardwick Hofmeister*
     Martha Hardwick Hofmeister
     State Bar No. 08981500
     3333 Lee Parkway, Tenth Floor
     Dallas, Texas 75219
     Telephone:214.780.1400
     Facsimile: 214.780.1401
     EMail:      mhardwick@shacklaw.net

     ATTORNEYS FOR DEFENDANTS,
     CSA DELIVERY, INC., d/b/a COURIER
     SOLUTIONS OF AMERICA, INC.,
     WOODROW CLAYTON, SR., WOODROW
     CLAYTON, JR., DARLENE CLAYTON,
     ACTION COURIER & LOGISTICS, LLC,
     NORTH AMERICAN PRESORT, INC., and
     HOUSTON AREA COURIERS, INC.

Of Counsel:

Kenneth H. Johnson
Texas Bar No. 10762000
Kenneth H. Johnson & Associates
P.O. Box 630708
Houston, Texas 77263
Telephone:      713.780.7047
Facsimile:      713.780.7671

Richard L. Moseley

Texas Bar No. 14570900
P.O. Box 630708
Houston, Texas 77263
Telephone:    713.780.7047
Facsimile:    713.780.7671

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Emil Lippe, Jr., Esq.
Law Offices of LIPPE & ASSOCIATES
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas 75203
Attorney for Plaintiff Courier Solutions, Inc.

/s/ *Daniel J. Hoffman*
Daniel J. Hoffman